IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DOMENEQUE PERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:25-cv-965-RAH-JTA |
| | ) | (WO) |
| NANCY T. BUCKNER, Commissioner; | ) | |
| individually and in her official capacity, | ) | |
| and JENNIFER M. BUSH, Assistant | ) | |
| Attorney General; individually and in her | ) | |
| official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court[1] is *pro se* Plaintiff Domeneque Perry's amended complaint against

Defendants Nancy T. Buckner, Commissioner of the Alabama Department of Human

Resources ("DHR"), and Alabama Assistant Attorney General Jennifer M. Bush. (Doc. No.

5.) For the reasons stated below, the undersigned recommends that Plaintiff's complaint

and this action be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for

failure to state a claim upon which relief can be granted.

## I.    JURISDICTION

This court has subject matter jurisdiction over this action based on federal question

jurisdiction, 28 U.S.C. § 1331, because Plaintiff's claims arise under 42 U.S.C. § 1983.

---

[1] This case was referred to the undersigned for consideration and disposition or recommendation
on all pretrial matters as may be appropriate. (Doc. No. 3.)

## II.    STANDARD OF REVIEW

When a litigant is allowed to proceed *in forma pauperis* in this court, the court will screen the litigant's complaint in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B). Section 1915(e)(2) requires a district court to dismiss the complaint of a party proceeding *in forma pauperis* whenever the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii).

The standard that governs a dismissal under Federal Rule of Civil Procedure 12(b)(6) also applies to dismissal for failure to state a claim upon which relief can be granted under 28 U.S.C. § 1915(e)(2)(B)(ii). *Douglas v. Yates*, 535 F.3d 1316, 1320 (11th Cir. 2008). In applying this standard, the complaint of a *pro se* plaintiff must be liberally construed. *Douglas*, 535 F.3d at 1320. Nevertheless, the factual allegations in the complaint must state a plausible claim for relief, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and the court is not "'bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The factual allegations need not be detailed but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (applying *Twombly* to a *pro se* complaint). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. 662, 678. *See also Twombly*, 550

U.S. at 555 (holding that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

### III.    FACTS AND PROCEDURAL HISTORY

On December 8, 2025, Plaintiff filed a complaint against Defendants DHR, Buckner, and Bush. (Doc. No. 1.) On December 12, 2025, upon review of the complaint pursuant to § 1915(e)(2)(B), the court concluded Plaintiff's complaint failed to state a claim upon which relief could be granted and ordered Plaintiff to file an amended complaint. (Doc. No. 4 at 3, 6.) On December 19, 2025, Plaintiff filed an amended complaint seeking monetary damages and declaratory judgment against only Defendants Buckner and Bush. (Doc. No. 5.)

In her amended complaint, Plaintiff alleges that, in 2007, she sought child-support enforcement services from DHR pursuant to Title IV-D of Social Security Act.  (Doc. No. 5 at 2.)  Upon Plaintif's initiation of her case, "DHR assumed [federal and state mandated] responsibility for conducting mandatory locate and enforcement actions," "including the timely use of the Federal Parent Locator Service ('FPLS')[2] to verify and locate the non-

---

[2] Title IV-D of the Social Security act created the FPLS

> [f]or the purpose of enforcing the support obligations owed by noncustodial parents to their children and the spouse (or former spouse) with whom such children are living, locating noncustodial parents, establishing paternity, obtaining child and spousal support, and assuring that assistance in obtaining support will be available under this part to all children . . .  for whom such assistance is requested.

42 U.S.C. § 651. "Any state that follows the requirements of the Act may request the Secretary of the Treasury to certify for collection delinquent child support payments in the same manner as the Internal Revenue Service collects unpaid tax obligations." *Sanford v. Hurst*, No. 5:24-cv-1406-CLS, 2025 WL 1448219, at *1 n.1 (N.D. Ala. May 20, 2025) (citing 42 U.S.C. § 652(b)).

custodial parent." (*Id*.) During "this initial period, no FPLS locate action was initiated, []no verification of the non-custodial parent's identifying information was completed," and Plaintiff was never "informed that mandatory locate actions had not been performed." (*Id*.)

In 2008, Defendant Buckner became DHR's Commissioner. (*Id*. at 2.) In 2011, Defendant Bush became an Assistant Attorney General assigned to matters involving DHR's child support enforcement operations. (*Id*. at 3.) After being appointed to their respective roles in 2008 and 2011, Defendants Buckner and Bush failed to "[take] action to correct the absence of required federal locate enforcement" in Plaintiff's enforcement case. (*Id*.) Thereafter, "[b]eginning no later than 2012, Plaintiff undertook independent efforts to locate the non-custodial parent due to the absence of enforcement process within her DHR case." (*Id*.)

Sometime in 2025, Plaintiff "escalated her concerns through written correspondence and external reporting" to DHR and other "state and federal entities, identifying the lack of enforcement activity in her DHR case." (*Id*.) Plaintiff's 2025 "communications placed Defendants on notice of Plaintiff's concerns regarding long-standing inaction and unresolved enforcement obligations." (*Id.* at 4.) In October 2025, following Plaintiff's written request, "DHR initiated FPLS locate activity for the first time in Plaintiff's case." (*Id*.; *see also id.* at 5 (stating DHR undertook "[t]he required federal locate activity . . . in October 2025, following Plaintiff's administrative filings and external reporting").) On or about October 24, 2025, DHR sent Plaintiff a letter acknowledging it had "finally reviewed" Plaintiff's case "using all available resources." (*Id.* at 4.) DHR's October 2025 letter "represented the first documented federal-level locate activity in Plaintiff's case since

its initiation in 2007." (*Id*. at 4.)

Plaintiff asserts five counts in her complaint, each consisting of an individual-capacity § 1983 claim. In Count I, Plaintiff asserts that, without providing adequate procedural due process, both Defendants deprived her of a property interest in "the lawful administration of her Title IV-D child-support enforcement case." (*Id*. at 4–5.) In Count II, Plaintiff asserts both Defendants violated federal law by failing to "initiate mandatory locate actions, including use of the [FPLS], within a prescribed timeframe following case initiation." (*Id.* at 5.) In Count III, Plaintiff alleges that, beginning in 2008 when Defendant Buckner became DHR Commissioner, Defendant Buckner "knew or reasonably should have known of systemic enforcement failures within DHR and failed to take corrective action with respect to Plaintiff's case." (*Id.* at 6.) In Count IV, Plaintiff alleges Defendant Bush deprived Plaintiff of her "enforcement rights" "beginning no later than 2011." (*Id.*) In Count V, Plaintiff alleges both defendants deprived her of her substantive due process rights by their "prolonged failure to perform mandatory enforcement actions," leaving "Plaintiff's case . . . unenforced for nearly two decades." (*Id.* at 7.) Plaintiff alleges that, as a result of Defendants' unlawful actions, she suffers ongoing financial and emotional harm. (*Id.*) She seeks compensatory damages, punitive damages, and a declaratory judgment declaring Defendants' past actions unlawful. (*Id.* at 7–8.)

## IV.    DISCUSSION

In Alabama, the statute of limitations for a § 1983 action is two years. *Chapman v. Dunn*, 129 F.4th 1307, 1315 (11th Cir. 2025). The statute of limitations begins to run when "'the facts which would support a cause of action are apparent or should be apparent to a

person with a reasonably prudent regard for [her] rights.'" *Id.* (quoting *Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir. 1996)). "'Plaintiff[] must know or have reason to know [she was] injured, and must be aware or should be aware of who inflicted the injury.'" *Moncrief v. City of Montgomery*, No. 2:23-cv-331-JTA, 2025 WL 3252645, at *6 (M.D. Ala. Nov. 21, 2025) (quoting *Rozar*, 85 F.3d at 562). At that point, "the plaintiff has a complete and present cause of action and can thus file suit and obtain relief." *Tillman v. Orange Cnty., Fla.*, 519 F. App'x 632, 635 (11th Cir. 2013) (citation omitted). "The cause of action accrues even through the full extent of the injury may not then be known or predictable." *Omanwa v. Catoosa Cnty., Ga.*, 711 F. App'x 959, 961 (11th Cir. 2017) (citing *Wallace v. Kato*, 549 U.S. 384, 391 (2007)).

In this case, Plaintiff alleges DHR did not timely initiate child support enforcement efforts in 2007. (Doc. No. 5 at 2.) She further alleges that, "beginning in 2008" when Defendant Buckner assumed office, Defendant Buckner "knew or reasonably should have known of systemic enforcement failures within DHR and failed to take corrective action with respect to Plaintiff's case." (*Id.* at 6.) She alleges that, "beginning no later than 2011," Defendant Bush "had the authority and responsibility to ensure that enforcement actions complied with federal requirements once deficiencies were identified or discoverable," but failed to correct the oversight. (*Id.*) Most critically, Plaintiff alleges that, "[b]eginning no later than 2012, [she] undertook independent efforts to locate the non-custodial parent due to the absence of enforcement progress within her DHR case." (*Id.* at 3.) Thus, by 2012 at the very latest, "the facts which would support a cause of action [were] apparent or should [have been] apparent" to Plaintiff. *Chapman*, 129 F.4th at 1315 (citation modified). At

6

some point in 2012 she "knew, or should have known, all of the facts necessary to pursue a cause of action, but [she] did not file [her] complaint until" December 2025, at least 15 years later. *Lovett v. Ray*, 327 F.3d 1181, 1182–93 (11th Cir. 2003). "Therefore, [her] claim was untimely." *Id.* at 1183.

In reaching this conclusion, the undersigned has considered whether the continuing violation doctrine salvages Plaintiff's claim from the expiration of the two-year limitations period. "'The continuing violation doctrine permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period." *McGroarty v. Swearingen*, 977 F.3d 1302, 1307 (11th Cir. 2020) (quoting *Ctr. For Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006)). "The critical distinction in the continuing violation analysis . . . is whether the plaintiff complains of the present consequence of a one[-]time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does." *Lovett*, 327 F.3d at 1182 (citation modified).

Plaintiff alleges the violation that caused her injury—DHR's failure to timely initiate a child support enforcement action—occurred in 2007. Moreover, according to Plaintiff, Defendants Buckner and Bush failed to correct the violation in 2008 and 2011, respectively. Plaintiff has not alleged either of the two Defendants committed a new, actionable violation of her rights since that time, much less within the past two years. *See Omanwa*, 711 F. App'x at 961 ("[T]he 'continuing violation' doctrine may allow a plaintiff to bring [a] claim if <u>additional</u> violations of law occurred within the statutory period." (emphasis added)). In fact, the only alleged activity within the limitations period is that,

once Plaintiff's 2025 correspondence placed Defendants on notice of her concerns about her case, DHR "initiated FPLS locate activity" and "reviewed the case using all available resources." (Doc. No. 5 at 4.) Despite Plaintiff's allegations of ongoing harm, the retroactive monetary and declaratory relief Plaintiff seeks is directed at past alleged violations of which she became aware in 2012. *See McGinley v. Mauriello*, 682 F. App'x 868, 872 (11th Cir. 2017) ("Our precedents draw a clear analytical distinction between continuing violations and the continuing effects of a completed violation; the former extends the limitations period while the other does not."). Therefore, the continuing violation doctrine does not apply, and Plaintiff's action is barred by the statute of limitations.

Consequently, the complaint is due to be dismissed with prejudice and without an opportunity to amend.[3]

## V.    CONCLUSION

Accordingly, the undersigned RECOMMENDS that Plaintiff's complaint and this action be DISMISSED with prejudice.

Further, it is ORDERED that the parties shall file any objections to this Recommendation on or before **June 29, 2026**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made;

---

[3] Though a *pro se* litigant generally must be given at least one opportunity to amend her complaint, the court need not allow an amendment where amendment would be futile. *See Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th Cir. 2014). Here, amendment would be futile because Plaintiff's claims are barred by the statute of limitations. *See Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993) (recognizing the futility of amendment where the statute of limitations would bar the amended claims).

frivolous, conclusive, or general objections will not be considered. The parties are advised that this Recommendation is not a final order of the Court; therefore, it is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1; *see Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

DONE this 15th day of June, 2026.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGEa

9